MEMORANDUM OF DECISION
WILSON, J.
This is the Plaintiffs second appeal from a final decision of the Defendant, Office of the Director of Regulation (ODR) revoking his gaming license. On his first appeal, Odgers v. ODR, 4 G.D.R. 10 (2009), this Court sustained Plaintiffs appeal and remanded the ease to the Defendant agency for further proceedings. In this case, as in the first appeal, the revocation of the Plaintiffs license was based upon a violation of the Mohegan Sun Casino’s drug-free policy. In the first appeal, this Court sustained the appeal “because the faet of an arrest alone cannot be grounds for a revocation of a license; because the notice did not allege a violation of a drug-free policy; and because there was no evidence in the record of the drug free policy ...” [1]
On remand the Defendant issued a new notice of hearing. The notice indicated that “the subject of the hearing will be an issue of suitability for employment by the Mohegan Sun Casino based on violation of your employer’s Zero Drug Tolerance Policy. The Zero Drug Tolerance Policy is set forth in the employee handbook on pages 26, 27 subsection 12, Possession of a Controlled Substance is conduct which violates company (sic) policies and procedures and results in disciplinary action up to and including termination.” (Transcript p. 2). The drug-free policy was entered into the record in this case as Exhibit 4.
The notice of the remand hearing was not based on the arrest alone and the *123 notice did allege a violation of the drug-free policy. Therefore, the first two reasons for the remand in the previous case are not present here and the Plaintiff has raised no issues regarding them on this second appeal.
The third reason for remand in the previous case was that there was no evidence in the record of the drug-free policy. On the remand hearing, the Defendant introduced into the record Exhibit 4 which is an excerpt from the Employee Handbook entitled “Personal Conduct Policy.” The Defendant contends that this is the “drug-free policy.” The .Plaintiff contests this and argues that there is no “Zero-Drug Tolerance Policy”, that the Defendant did not violate such policy (indeed could not because there was no such policy), and that there are insufficient grounds for revocation of his license.
After the remand hearing the material and relevant findings of fact made by the Defendant included that the Notice of Hearing alleged that the Plaintiff violated the employer’s policy concerning illegal drugs; that the zero-drug tolerance policy is set forth in the Employee Handbook at pages 26 and 27 subsection (12) (Exhibit 4); that the Plaintiff signed for the Employee Handbook; and that the Plaintiff acknowledged that marijuana is a controlled substance and knew that it was illegal.
The Defendant summarized (or in some cases paraphrased) the applicable law (to be fully stated hereafter) and rendered the following conclusion in again revoking the Plaintiffs license:
“1. The Appellant violated the Personal Conduct Policy when he was arrested in 2008 for Possession of Marijuana. The policy, also known as a drug free policy or zero tolerance policy, is provided to each prospective employee during their orientation. The employee acknowledges the receipt of this policy which is found in the Employee handbook. Furthermore, the appellant testified that he didn’t have to know' that this policy existed, to know that possession of marijuana was illegal. The Director is granted the authority to issue and revoke licenses for the gaming operation. Although the Appellant received a diversionary program for his possession charges, the Director is concerned—and it is within the scope of his authority—to determine the suitability of an individual to retain his license in light of his admitted illegal use and possession of marijuana. This Hearing Office concurs with the MTGC, and finds that, by a preponderance of the evidence, the appellant does not meet the Commission standards of expectations or suitability for continued licensing to work at Mohegan Sun.”
On this appeal the Plaintiff contends that there is no “zero drug tolerance policy” and that the Plaintiff’s conduct did not provide grounds for the revocation of his license. The plaintiff argues that the decision of Judge Eagan in Izbicki v. ODR, GDTC-AA-08-138-FOE (November 17, 2009) and (May 19, 2010) support sustaining the appeal. This court agrees and therefore the Plaintiffs appeal is sustained.
STANDARD OF REVIEW
The standard of review and the applicable law was set forth in the previous decision, and will not be repeated here. See also Izbicki v. ODR, 4 G.D.R. 20 (2009), and subsequent decisions therein on November 17, 2009 and May 19, 2010.
STANDARD FOR REVOCATION OF LICENSE
Under the Indian Gaming Regulatory Act (the IGRA), 25 U.S.C. § 2701 et seq., *124 the Mohegan Tribe of Indians is required to provide, inter alia, an “adequate system which ... includes ...
(II) a standard whereby any person whose prior activities, criminal record, if any, or reputation, habits and associations pose a threat to the public interest or to the effective regulation of gaming, or create or enhance the dangers of unsuitable, unfair, or illegal practices and methods and activities in the conduct of gaming shall not be eligible for employment; ...”
See 25 U.S.C. § 2710(b)(2)(F)(ii)(II).
Under subsection (c)(2):
“(2) If, after the issuance of a gaming license by an Indian Tribe, reliable information is received from the Commission indicating that a primary management official or key employee does not meet the standard established under subsection (b)(2)(F)(ii)(II) of this section, the Indian tribe shall suspend such license and, after notice and hearing, may revoke such license.”
Pursuant to the IGRA, and in conformity with it, the Mohegan Tribe and the State of Connecticut entered into a “Tribal-State Compact” upon which the Defendant rests his decision to revoke the Plaintiffs license. The relevant section of the Compact reflects (but does not precisely follow) the IGRA:
“Sec. 5, (e) Action by State gaming agency. The State gaming agency shall, as soon as is practicable after receipt of a completed license application, either grant or deny the license. The State gaming agency may deny a gaming employee license to any application who:
(1) has been determined to be a person whose prior activities, criminal record, if any, or reputation, habits and associations pose a threat to the effective regulation of gaming or create or enhance the chances of unfair or illegal practices, methods, and activities in the conduct of the gaming activities permitted hereunder; provided, however, that the State shall not apply standards for approval of licenses pursuant to this section more rigorously than those actually applied in the approval of employee licenses in gaming enterprises operated or regulated exclusively by the State;” ...
“Sec. 5, (g) Revocation or suspension of license. The State gaming agency or the State law enforcement agency may investigate any person who holds a gaming employee license at any time and the State gaming agency may suspend or revoke any gaming employee license issued hereunder if new information concerning facts arising either prior to or since the issuance of the original license, or any renewal thereof, comes to the attention of the State gaming agency which information would justify denial of such original license, or any renewal thereof, pursuant to subsection (e) of this section; provided, however, that no license shall be revoked or suspended except after such notice and hearing as is generally required for similar administrative actions under the administrative procedures applicable to agencies of the state.”
The Mohegan Tribal Ordinances, which are required to conform to the IGRA, contain provisions which also reflect (but again do not precisely follow) the language of the IGRA.
“Sec. 2-69. Qualifications for Gaming Licenses.
(a) The Council may issue or renew a Gaming License to an applicant who submits a proper and completed application and pays the appropriate license *125 fee, provided that The Council determines that the applicant:
(1) Is not a minor;
(2) Is a person of good character, honesty, and integrity;
(3) Has no prior activities, criminal record, reputation, habits, and associations which pose a threat to the public interest or the interest of The Tribe or to the effective regulation and control of gaming, or create or enhance the dangers of unsuitable, unfair, or illegal practices, methods, and activities in the conduct of gaming or the carrying on of the business and financial arrangements incidental to the conduct of gaming;
(4) Has not supplied false and/or misleading information or who has not omitted material information required under this Article, the Act, and 25 CFR Chapter III (25 CFR 500-599);
(5) Has not had, or is not in privity with anyone who has had, a Gaming License revoked for cause in any jurisdiction since the effective date of the Act;
(6) Has complied with this Article or any resolution adopted by The Council;
(7) Does not occupy a competing position in the employ of another tribe within a five hundred (500) mile radius of any Tribal Gaming Operation; and
(8) Does not violate any of the requirements set forth in 25 USC 2711(a) and (e).
(b)Subject to the requirement of payment of annual license fees, each Gaming License shall be valid for three (3) years provided that, in the discretion of The Council, a Gaming License may be granted for a term to run concurrently with the term of a Management Contract.
(c) A Gaming License may not be assigned or transferred and is valid only for use by the person in whose name it is issued and at the Gaming Establishment for which it is issued. A Gaming License shall be conspicuously displayed at all times at the Gaming Establishment for which issued.
(d) The Council shall make the final decision as to whether a Gaming License shall be issued, suspended, or revoked, subject to the dispute resolution procedures agreed to by The Tribe in a Management Agreement.
(e) Until authorized by a Tribal-State Compact, no Gaming License shall be issued by The Council for Class III Gaming.
(Ord. No. 94-1, § 9, 7-28-1994)”
The Defendant in his decision in this case recognized the applicability of the IGRA, The Compact, and the Ordinance, but did not precisely quote the foregoing provision. In paragraph 4 of his decision, the Defendant made the following “Findings of Law” (sic): •
“4. The decisions of the MTGC to suspend or revoke an employee’s license must be supported by credible evidence of activities, criminal conviction, reputation, habits and/or associations that pose a threat to the effective regulation of gamin or create or enhance the changes of unfair or illegal practices, methods, and activities in the conduct of the gaming activities.”
SUFFICIENCY OF THE EVIDENCE
This Court must affirm the decision of the Defendant if the decision is supported by “reliable, probative, and substantial evidence.” MTC Sec. 3-224(j)(5). In this case the decision rests upon three facts each of which must be supported by such evidence: (1) the drug free policy; (2) the violation of such policy; and (3) that such *126 violation, if proven, warrants revocation of the license.
In the prior appeal in this ease, the Defendant did not introduce into the record any evidence of any policy concerning any sort of “drug free policy” whether “zero tolerance” or otherwise. This was one of the three reasons why this Court sustained the Plaintiffs previous appeal. In this case, the Defendant introduced into the record as Exhibit 4 an excerpt from the Mohegan Sun Employee Handbook captioned “Personal Conduct Policy,” relevant excerpts from which are:
“Personal Conduct Policy
Mohegan Sun has developed the following conduct standards to ensure employees are treated fairly and in a consistent manner. These standards are necessary to protect the rights and interests of others and the efficient and effective operation of the business.
The following standards are prohibited by all employees and include but are not limited to the following:
12. Purchase, sale, possession or use of illegal drugs on or off duty or being under the influence of illegal drugs at any time on or off duty ...
29. Engaging in illegal activities, both on or off duty ...
[Violation of, or disregard for, a posted or known company standard, departmental rule, policy or procedure will result in disciplinary action up to and including termination.
The following guidelines have been established for Performance/Misconduct situations.
Step 1 Record of Discussion
Step 2 Final Written Notice
Step 3 Termination Notice”
This Court takes note that this is an employer’s “personal conduct policy” concerning possible disciplinary action including possible termination of an employee’s employment it is not per se a regulation of the Defendant ODR (or any other regulatory agency) regarding the revocation of a licensee’s license, which is governed by the standards set forth previously in this decision.
The Plaintiff vigorously argued in his brief and at the hearing on this appeal that the policy contained in Exhibit 4 is not a “zero-drug tolerance policy.” In fact the word “zero” does not appear in the policy. The Plaintiff also argues that there is a Mohegan drug policy “found at Policy # 45” and that this policy encourages rehabilitation and does not require termination. “Policy # 45,” whatever it is, does not appear in the record in this case— hence this Court does not consider it. See MTC Sec. 3—224(i) “the appeal ... shall be confined to the record ...”
The Defendant, contra, states that it does not rely at all on Policy # 45, but that it considers the drug free policy contained in the Employee Handbook to be tantamount to a “no drug tolerance policy also known as the zero-drug tolerance policy of the casino;” or as “the Casino’s no (zero) drug tolerance policy.” The Defendant’s role is to comply with the Tribal-State Compact and to determine whether a licensee’s conduct renders him unsuitable to retain his license under the standards applicable to the granting and revocation of such licenses previously set forth. These standards are separate and apart from an employee policy concerning possible progressive discipline for violation of such policy.
The question before this Court does not concern disciplinary action against an employee—it is not a grievance hearing concerning employment termination. This is an appeal from a license revocation and the issue is whether there is any substan *127 tial evidence in this record to support this decision. The Defendant contends that Exhibit 4 is evidence of the drug free policy in which the decision is based. Plaintiff argues to the contrary.
In this sub-issue the Court finds the evidence of Exhibit 4 is sufficient to support the finding that the Defendant has at least a “drug free policy” of some sort. For purposes of this decision, it is not material whether it is a “zero-drug tolerance policy” or not. It is sufficient for a finding that there is a drug-free policy.
The next sub-issue is quickly answered: The Plaintiff admitted that he used marijuana; that it was a controlled drug; and that it was a violation of the policy of the employee Handbook. The Court therefore finds sufficient evidence to support the finding that the Plaintiff violated the policy.
The final sub-issue raises more difficult questions, i.e. whether a finding that the Plaintiff violated the drug free policy is grounds for revocation of his license, bearing in mind that this is a different question than whether it is grounds for progressive discipline including termination of employment under the procedure set forth in the Employee Handbook. The question is whether a one-time, off-duty, recreational uses/possession of marijuana constitutes “prior activities, criminal record, if any, or reputation, habits, and associations,” and whether, if so, it is of such a nature as to “pose a threat to the public interest or to the effective regulation of gaming or create or enhance the dangers of unsuitable, unfair, or illegal practices and methods and activities in the conduct of gaming IGRA, 25 U.S.C. § 2710(b)(2)(F)(ii)(II).
Assuming, arguendo, that such one-time use (for that is all that the record in this case disclosed) constituted a “prior activity” within the meaning of the IGRA, there must also be evidence that such activity “poses” the “threat” or “creates or enhances” the “dangers” proscribed by the IGRA, the Compact and the Tribal Ordinances. There is no such evidence in this case. Izbicki v. ODR, GDTC-AA-08-138-FOE (November 17, 2009) is on all fours with this case. There, as here, was no evidence of how the Plaintiffs prior activity “either posed a threat to the effective regulation of the Tribe’s gaming enterprise, or enhanced the changes of illegal/unfair practices in gaming.” Ibid.
As Judge Eagan well noted in Izbicki, “unfortunately, absent some evidence linking the Plaintiffs personal use of marijuana to the integrity of the Mohegan gaming enterprise, the Defendant’s decision cannot be sustained.” It will not suffice that “the Director is concerned—and it is within the scope of his authority to determine the suitability of an individual to retain his license in light of his admitted illegal use and possession of marijuana.” (Conclusion of Defendant, page 8 emphasis added). “Concern” is not sufficient evidence to support the decision. Again, as in Izbicki., “here, the record is devoid of any evidence or even an explanation supporting the Defendant’s conclusion that Plaintiff’s conduct posed a threat to the Tribe’s gaming enterprise.” Ibid.
This court is aware that in Izbicki, Judge Eagan granted the Defendant’s Motion for Reconsideration; “However, even after reconsideration, the Plaintiffs appeal must be sustained in that the Director’s order revoking his license was an abuse of discretion and therefore, arbitrary and capricious.” (Eagan, J., May 19, 2010). In this case, as in Izbicki, the record does not reflect that the Defendant exercised any discretion in evaluating whether the evidence supported a finding that the Plaintiff posed a threat to the effective regulation *128 of gaming when he issued his decision revoking the Plaintiffs license.
This Court finds that the substantial rights of the Plaintiff have been prejudiced because the decision is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record and characterized by an abuse of discretion. The appeal is sustained, the decision of the Defendant is reversed, and the Plaintiffs gaming license is ordered to be reinstated.
So ORDERED.

. The underlying facts are fully set forth in the cited Memorandum of Decision and therefore will not be repeated in this decision.